IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODERICK W. LEAR, | ) | |
| | ) | Civil Action No.  06 - 1589 |
| Plaintiff, | ) | |
| | ) | Judge Maurice B. Cohill |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| DAVID J. WAKEFIELD; | ) | |
| CORRECTION OFFICER MASCDEA; | ) | |
| LORI KWISNEK; DIANE; and JANE | ) | |
| DOE, | ) | |
| Defendants. | | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.          RECOMMENDATION

For the reasons that follow, it is respectfully recommended that Defendants' Motion to Dismiss (doc. no. 16) be granted.

### II.          REPORT

Plaintiff, Roderick William Lear, is a state inmate currently confined at the State Correctional Institution at Greensburg, Pennsylvania.  He commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 against various officers and employees of the Pennsylvania Department of Corrections (DOC) at SCI-Greensburg alleging that they failed to provide adequate medical care for a heart attack he experienced on December 24, 2004.  Defendants have moved for dismissal of the Complaint alleging that Plaintiff failed to comply with the DOC three-step grievance process available to Pennsylvania state prisoners.  For the reasons that follow, Defendants' Motion should be granted.

**A. Standard of Review**

1

Defendants have filed a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) (doc. no. 26). The complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, ___U.S. ___, 127 S.Ct. 1964-65. In other words, "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1955. It is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

Courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. Id. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering pro se pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520

(1972). In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688 ).

### B. Failure to Exhaust Administrative Remedies

Defendants' basis for dismissal of the complaint is Plaintiff's alleged failure to have exhausted available administrative remedies as required by the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996). In this regard, in the PLRA, Congress amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e, concerning suits by prisoners. Before the amendments, prisoners challenging the conditions of their confinement under 42 U.S.C. § 1983 were not required to exhaust administrative remedies before filing suit. The PLRA amended section 1997e(a), as follows, making exhaustion a mandatory requirement.

> (a)     Applicability of administrative remedies
>
>    No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), as amended.

The United States Court of Appeals for the Third Circuit analyzed the applicability of the exhaustion requirement in 42 U.S.C. § 1997e in Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000) (Bivens action brought by a federal inmate) and Booth v. Churner, 206 F.3d 289 (3d Cir. 2000) (civil

3

rights action brought by a state prisoner). In each of these cases, the Court of Appeals announced a bright line rule that inmate-plaintiffs must exhaust all available administrative remedies before they can file an action in federal court concerning prison conditions. In so holding, the court specifically rejected the notion that there is ever a futility exception to section 1997e(a)'s mandatory exhaustion requirement. Booth, 206 F.3d at 300; Nyhuis, 204 F.3d at 66. A unanimous Supreme Court affirmed the Court of Appeals' holding in Booth v. Churner, 532 U.S. 731 (2001) where the Court confirmed that in the PLRA Congress mandated complete exhaustion of administrative remedies, regardless of the relief offered through those administrative procedures. In addition, in Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court clarified that the PLRA's exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or specific episodes and whether they allege excessive force or other conduct.

      The administrative grievance procedure for Pennsylvania inmates is codified in the Pennsylvania Department of Corrections Policy Statement No. DC-ADM 804-1, entitled "Consolidated Inmate Grievance Review System." The purpose of the grievance system is to insure that every inmate confined in a Bureau of Correction facility has an avenue through which prompt resolution of any problem which arises during the course of confinement may be sought. DC-ADM 804 ¶ 1. The grievance system applies to all state correctional institutions and provides three levels of review: 1) initial review by the facility grievance coordinator; 2) appeal of initial review to the superintendent or regional director; and 3) final appeal to the Secretary's Office. DC-ADM 804 ¶ VI. The administrative policy further provides that, prior to utilizing the grievance system, prisoners are required to attempt to resolve problems on an informal basis through direct contact or by sending an inmate request slip to the appropriate staff member. DC-ADM 804 ¶ V.

In the instant action, Defendants assert that the Complaint should be dismissed because Plaintiff failed to have exhausted his administrative remedies in that he failed to have filed a grievance concerning the alleged lack of medical care he received after his heart attack. The Court of Appeals for the Third Circuit has held that a prisoner's failure to comply with the procedural and substantive requirements of DOC's grievance policy, as set forth in DC ADM 804, results in procedural default, thereby precluding an action in federal court. *See* Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). In so holding, the Court of Appeals specifically held that failing to specifically name accused individuals in a grievance amounted to procedural default because the regulations so required.[1] The United States Supreme Court adopted a similar holding in Woodford v. Ngo, ___ U.S. ___, 126 S.Ct. 2378 (June 22, 2006) wherein it held that an untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the PLRA's mandatory exhaustion requirement. Woodford, 126 S.Ct. at 2382.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." This Court has described the doctrine as follows: "[A]s a general rule ··· courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without

---

1. The relevant regulations provide as follows: "The inmate shall include a statement of the facts relevant to the claim. The inmate should identify any persons who may have information that could be helpful in resolving the grievance. The inmate should also include information on attempts to resolve the matter informally. DC-ADM 804, Part VI.A.1.d.

imposing some orderly structure on the course of its proceedings.

Woodford, 126 S. Ct. at 2385-2386 (internal citations, quotations and footnotes omitted).

The Court further noted that "[c]onstruing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas respondent's interpretation would turn that provision into a largely useless appendage. The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodard, 126 S. Ct. at 2387. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction" and "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." Id. at 2387- 88.

Pennsylvania's Consolidated Inmate Grievance Review System requires that inmate grievances be in writing and in the format provided on the forms supplied by the institution. DC-ADM 804 ¶ (VI)(A)(1)(f). An initial grievance must be submitted by the inmate to the Facility Grievance Coordinator within fifteen (15) working days after the event upon which the claim is based. DC-ADM 804 ¶ (VI)(A)(1)(h). The Facility Grievance Coordinator must assign a grievance tracking number to all grievances (even rejected grievances) upon receipt and enter all grievances into the Automated Inmate Grievance Tracking System. DC-ADM 804 ¶ (VI)(B)(1)(a). If the Facility Grievance Coordinator determines that the issue being grieved is in accordance with DC-ADM 804, he or she will designate a staff member to serve as the Grievance Officer for that issue. DC-ADM 804 ¶ (VI)(B)(1)(e). The Grievance Officer must provide a written response to the inmate within ten working days, including a brief rationale summarizing the conclusions and any action

taken or recommended to resolve the issues raised in the grievance. DC-ADM 804 ¶ (VI)(B)(1)(h). An inmate may appeal an Initial Review decision, or grievance restriction, to the Facility Manager in writing, within five working days from the date of receipt by the inmate of the Initial Review decision. DC-ADM 804 ¶ (VI)(C)(1)(b). The Facility Manager must notify the inmate of his/her decision within fifteen working days of receiving the appeal; the decision may consist of upholding the decision, modification, reversal, remand, or reassignment for further fact-finding. DC-ADM 804 ¶ (VI)(C)(2)(c). An inmate who is dissatisfied with the disposition of an appeal from the Facility Manager, may submit an appeal to the Secretary's Office of Inmate Grievances and Appeals, within five working days of receiving the decision. DC-ADM 804 ¶ (VI)(D)(1)(b). The Secretary's Office must respond to all appeals within 30 working days and ensure that all appeals and responses are properly maintained in the Automated Inmate Grievance Tracking System. DC-ADM 804 ¶ (VI)(D)(2)(a).

       In the case at bar, Plaintiff procedurally defaulted his claim by failing to file any grievance concerning his alleged lack of medical attention within fifteen days from the time that he was able to file a grievance. Plaintiff admits that he did not file a grievance but states that he was unable to because he was incoherent from all his medications. Plaintiff's assertion is not credible as the record demonstrates that he filed Grievance No. 108468 on February 1, 2005 concerning his inmate pay (doc. no. 16-2, pp. 44-45). As he was coherent enough to file that grievance, he raises no plausible explanation as to why he did not file a grievance concerning his alleged lack of medical care, which was allegedly occurring at the same time. Moreover, the record shows that he was not released from SCI-Greensburg until April 4, 2005, three months after his heart attack. Thus, he had three months within which to file a grievance. This Court is required to follow the directive of the

United States Supreme Court and grant Defendants' Motion to Dismiss due to the Plaintiff's failure to have properly exhausted his available administrative remedies.

**III.**     **CONCLUSION**

For the reasons set forth above, it is respectfully recommended that Defendants' Motion to Dismiss (doc. no. 16) be granted.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Dated:        November 26, 2007                    Lisa Pupo Lenihan
                                                    United States Magistrate Judge

cc:           The Honorable Maurice B. Cohill
              United States District Judge

              Roderick William Lear
              DE-7464
              SCI Greensburg
              R.D. 10, Box 10
              Greensburg, PA 15601